# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ARGIE JUNIOR MORGAN**                                                              **PLAINTIFF**

**V.**                                                                               **NO. 1:09CV109-M-D**

**CITY OF CORINTH, MISSISSIPPI**                                                     **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is an Age Discrimination in Employment Act ("ADEA") case in which plaintiff Argie Junior Morgan seeks recovery arising out of his January 2008 termination from his position as building inspector for the City of Corinth. Plaintiff began his tenure as building inspector on October 4, 1995, when he was 52 years old. As building inspector, Morgan was responsible for code enforcement of residential and commercial buildings for the City. Morgan's tenure as building inspector was rather contentious, although the parties disagree as to whether this was the result of genuine deficiencies in his work performance. Plaintiff asserts that he was an outstanding building inspector, while defendant maintains that he frequently failed to observe proper working hours and failed to properly document his inspections. On January 17, 2008, the Board of Aldermen voted unanimously to terminate Morgan's employment after it became clear that he would not retire on his sixty-fifth birthday, as many aldermen had hoped. Feeling aggrieved, plaintiff filed a charge of age discrimination with the EEOC, and he subsequently

filed this ADEA action in this court.

The City has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding its liability under the ADEA and that it is entitled to judgment as a matter of law. Under the ADEA, "[i]t shall be unlawful for an employer to fail or refuse to hire ... any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009). Applying the framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "[a] plaintiff relying on circumstantial evidence must put forth a *prima facie* case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010).

In determining whether the plaintiff's rebuttal precludes summary judgment, "[t]he question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether this reason was pretextual." *Id.* A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy

2

of credence.' " *Id.* (*quoting Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). A showing that the unsuccessful employee was " 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected" will be sufficient to prove that the employer's proffered reasons are pretextual. *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995).

In the court's view, even assuming that plaintiff is able to establish a *prima facie* case of discrimination in this case, there exist no genuine fact issues regarding whether defendant's stated non-discriminatory reason for terminating him is merely a pretext for discrimination. Defendant asserts that it terminated plaintiff due to his poor work performance over a number of years, and it has submitted very considerable evidence supporting this assertion. Most notably, defendant has submitted a 2003 letter from Corinth Mayor Jerry Latch and the then-Board of Aldermen stating that:

> We, individually and collectively, continue to receive complaints about your job performance as building inspector for the City of Corinth. It is alleged that you are not performing inspections, that your are often unavailable, and that you conduct personal business during working hours. Drive by or cursory building inspections are not acceptable because it places the City of Corinth in a situation of potential future liability, your unavailability during working hours is totally inexcusable and conducting personal business during working hours is prohibited. We expect to see a rededication and recommitment to your job that reflects favorably on the City of Corinth. We also expect you to maintain your published office hours and otherwise remain availability to city personnel and residents throughout every working day. You are responsible and accountable for enforcing the building codes, zoning ordinance and subdivision ordinance of the City of Corinth.

*November 4, 2003 Letter, attached to Defendant's Motion as Exhibit C.* The letter concluded with a warning that "[i]f you fail to correct these problems immediately, you will be subject to disciplinary action up to and including termination of employment." Defendant argues that their

were other alleged deficiencies in plaintiff's job performance, including an alleged failure to properly document his inspections.

Some of the strongest evidence that the City had very genuine concerns with plaintiff's job performance was the deposition testimony of David Huwe, the City's Director of Community Development and Planning. Huwe testified that he arranged, with the Mayor's consent, to have a GPS tracking device installed on plaintiff's truck. In explaining the reasons for this action, Huwe testified that:

> Q: Do you recall when a GPS monitor was put on his truck?
> A: Yes.
> Q: Whose decision was that?
> A: That was mine.
> Q: Did you tell him there was going to be a monitor put on his truck?
> A: No.
> Q: You didn't tell him at all? Did the mayor know about this?
> A: Yes.
> Q: Did he approve it?
> A: Yes.
> Q: And what were you hoping to find with the monitor on his truck?
> A: Where he was spending his time, basically.

In the court's view, Huwe's testimony rather emphatically demonstrates that the City had very real concerns regarding plaintiff's unexplained absences from his job duties. Huwe testified that he had other issues with plaintiff's job performance, including "not trying to follow the code," which Huwe described as being plaintiff's primary work deficiency.

In his deposition, plaintiff acknowledged that there were occasions where he was away from his job duties, and he appears to at least tacitly acknowledge that the City may have had some valid concerns in this regard. Plaintiff asserts, however, that he was an excellent building inspector, noting that, at a 2000 Southern Building Code Conference, he "made one of the

4

highest grades and was asked to become one of the board members." It is apparent, however, that plaintiff's technical knowledge of his job duties does not alter the fact that the City clearly had very genuine concerns regarding his failure to actually perform his duties in a diligent and responsible manner.

From reviewing the record, it is apparent that plaintiff has no real evidence that age discrimination played any role in his termination. Plaintiff emphasizes the fact that some members of the Board of Aldermen were eagerly awaiting his expected retirement on his sixty-fifth birthday and that they only decided to terminate him when it became apparent that he would not, in fact, retire. In the court's view, however, this fact that does not serve as evidence that plaintiff's age itself was the reason for his termination, but, rather, that important city officials simply wanted him removed from his duties, either voluntarily or involuntarily. This conclusion is supported by the testimony of Alderman Joe Vann, who testified in his deposition as follows:

> A. . . . I think we all thought Junior was going to retire when he was 65. . . . And that's what he led me to believe, and I think that's what he led others to believe. And I believe – I certainly can't speak for the other aldermen, or the mayor, or anybody else – I believe we would have fired him before then because of lack of performance, other than we were going to try to – I think we wanted to try to get him to 65. . . . And there was some talk at that meeting about he was not going to retire at age 65.
>
> Q. And his birthday was January 25th, about a week after that meeting. And so you found out he wasn't going to retire, so then you decided to fire him?
>
> A. Well, not because we didn't like him, but because of his job performance. He should have been fired two to three years ago, I suspect.

In the court's view, the fact that plaintiff's refusal to retire contributed to his termination does not support a conclusion that age discrimination played any role in his termination. Indeed, it can certainly be argued that, by giving him ample opportunity to retire on his own terms, the City was

attempting to be rather generous with plaintiff.

The closest plaintiff comes to offering any proof of age discrimination is his testimony that Mayor Latch, whose daughter married plaintiff's son, told him immediately after his termination that it was due to "age discrimination" and that he should "sue the hell out of the city." In his deposition, Latch acknowledged that he told plaintiff at the time that he should sue, but he indicated that he made the comments out of frustration and that he regretted making them. When asked whether the City had good cause to terminate plaintiff, Latch testified as follows:

> Q: But did you believe he should have been fired?
>
> A: Over the years, I have had lots of frustrating meetings with Junior about his job performance, and you know, I think they would have probably had sufficient grounds to have dismissed Junior if they chose to. It had nothing to do with his age or birthday or anything like that.

In the court's view, Mayor Latch's opinion *may* have served as sufficient evidence to survive summary judgment if he had stood by that opinion and been able to support it with concrete reasons. Instead, Latch offered no reasons why he made the statement other than "frustration" over the firing of his in-law relative, and he specifically denied that plaintiff's age discrimination claims had merit. The fact that Mayor Latch was well aware of the deficiencies in plaintiff's job performance is evident from the fact that he signed the 2003 letter threatening plaintiff with termination and that he signed off on the decision to place a GPS monitor on his truck. Accordingly, the court sees no valid argument that Mayor Latch might simply be toeing the City line by now testifying that it had good cause to terminate plaintiff.

Lacking any real proof of discrimination, plaintiff attempts to establish that at least some

of the member of the Board of Aldermen who voted to fire him did so out of reasons which, if true, are less than commendable. For example, Morgan testified that, at the January 2008 meeting which preceded his firing, Alderman Chip Woods told him that he wanted to become an alderman just so he could fire him because, "I feel that whenever you were on the planning commission, that you snurfed [sic] your nose up at me a time or two." Plaintiff emphasizes this testimony in his brief, but the fact that he does so strikes the court as being a tacit admission that he lacks proof that *age discrimination* motivated his termination. Evidence that personal animosity or pique may have played a role in plaintiff's termination in no way advances his ADEA claim, which requires proof that *age* was the determinative factor in his termination. Indeed, even if the court is to assume that Woods wanted to become an alderman specifically to fire plaintiff, then it is implausible, to say the least, that he was so motivated because plaintiff was approaching sixty-five years of age. From reviewing the record, it appears to the court that at least some of the aldermen who voted to fire plaintiff may have done so for individualized reasons, but there is no indication that age discrimination was a factor for any of those aldermen.

While plaintiff's claims would very likely not have survived summary judgment regardless, the court notes that the legal landscape took an unfavorable turn for plaintiff shortly after the filing of his lawsuit. At the time this suit was filed, the Fifth Circuit had interpreted U.S. Supreme Court authority as allowing the "mixed motive" option in ADEA cases, thereby allowing plaintiffs to survive summary judgment upon a showing that age discrimination was merely one motivating factor among others behind an adverse employment action. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). As noted above, however, the Supreme Court made it clear in its June 2009 decision in *Gross v. FBL Fin. Servs., Inc.*, that ADEA

plaintiffs are required to establish genuine fact issues "that age was the 'but-for' cause of the challenged employer decision," thus making the burden of surviving summary judgment considerably more difficult for plaintiffs in ADEA cases. *Id*. at 2351. In his brief, plaintiff argues - consistent with the "old" law - that he has established fact issues that age discrimination was at least a motivating factor for his termination. The court does not agree, but, even if it did, this would not be sufficient to allow him to survive summary judgment in light of *Gross*.

In light of the foregoing, the court concludes that no genuine issues of material fact exist regarding plaintiff's ADEA claims, and they are therefore due to be dismissed as a matter of law. Defendant's motion for summary judgment seeking same will therefore be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be issued this date pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 22nd day of February, 2011.

       **/s/ MICHAEL P. MILLS**
       **CHIEF JUDGE**
       **UNITED STATES DISTRICT COURT**
       **NORTHERN DISTRICT OF MISSISSIPPI**